IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **CHARLES B. BROWN,** | ) | **CASE NO. 1:10CV805** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE SOLOMON OLIVER** |
| | ) | |
| v. | ) | |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | **MAGISTRATE JUDGE GREG WHITE** |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | **REPORT AND RECOMMENDATION** |

Plaintiff, Charles B. Brown ("Brown"), challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Brown's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be affirmed.

**I. Procedural History**

On February 3, 2006, Brown filed an application for POD, DIB, and SSI alleging a disability onset date of January 1, 2003, and claiming that she was disabled due to post-stress disorder, weakness in her legs and back, and fibroid tumors.[1] (Tr. 61.) Her application was

---

[1] When Brown filed a request for reconsideration in June, 2006, she claimed she was disabled due to pain in her joints and back and a mental impairment. (Tr. 71.)

denied both initially and upon reconsideration. Brown timely requested an administrative hearing.

On May 19, 2008, an Administrative Law Judge ("ALJ") held a hearing during which Brown, represented by counsel, testified. Bruce Holderead, an impartial Vocational Expert ("VE") also testified. On August 25, 2008, the ALJ found Brown was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II. Evidence

### *Personal and Vocational Evidence*

Age 43 at the time of her administrative hearing, Brown is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563; 416.963. Brown has a high school education and past relevant work as an inspector in a car plant.

### *Hearing Testimony*

At the hearing, Brown testified to the following:

- She suffers from back pain, which started ten years earlier after lifting objects at a job in Selma, Alabama. (Tr. 23-24.) She is not able to climb stairs or take walks longer than a block-and-a-half. (Tr. 23.) To help cope, she takes muscle relaxers and painkillers. (Tr. 24.)

- She suffers from right foot pain after twisting it some years ago. (Tr. 25.) She cannot stand over an hour-and-a-half without it throbbing. (Tr. 26.)

- She suffers from post-traumatic stress disorder, obsessive-compulsive disorder, panic attacks and bipolar disorder. (Tr. 28.) The event triggering the post-traumatic stress disorder was the passing of her mother in 1990, leaving her responsible for a disabled father, a brother with Down's Syndrome, a mentally disturbed aunt, a 102 year old grandmother, in addition to Brown's five children. (Tr. 29-30.)

- Her panic attacks, which occur approximately every six months, are triggered by various things, including feelings of abandonment in open parking lots. (Tr. 31.) The attacks last about 15-20 minutes. (Tr. 32.) During the attacks, she sits down and breathes hard or feels dizzy. *Id.*

- She recently worked as laborer in a temporary position. A friend worked with her at that job, which she claims she would not have been able to do if it had not been for that friend's support and assistance. (Tr. 33-34.)

- At the time of the hearing, she had a part-time job working with people who have

> Down's Syndrome as she is able to understand and communicate with them. (Tr. 34-36.) Her duties include reminding them to take medications and providing them with activities and assistance. (Tr. 35.) Her clients include her brother and one other person. *Id*. She attempted working full-time doing this type of work for a temporary agency, but could not handle a full work schedule. (Tr. 37.)

On March 11, 2006, Brown completed a Function Report where she noted that she is able to care for her personal needs, such as bathing, dressing, preparing meals, and working. (Tr. 159-161.) She also noted that she is able to perform household chores, but not the yard work. (Tr. 162.) Further, she noted that she leaves her home during the day, but is afraid to go out by herself at night. *Id*. She reads, watches movies, and visits the library once a week. (Tr. 163.)

After questioning Brown about her various jobs, the ALJ posed the following hypothetical to the VE:

> Assume further that the individual has no physical limitations, but has the residual functional capacity to do jobs that involve performing simple, repetitive and entry-level work tasks. * * * That are limited to work where contact with the public is incidental to the work performed and limited to low-stress jobs. Could you come up with a job for such a hypothetical individual?

(Tr. 44.)

The VE testified that such an individual could work as an industrial cleaner, a medium, unskilled position (11,000 positions in northeast Ohio, 43,000 in Ohio, 870,000 in the national economy). (Tr. 45.)

Brown's attorney proposed another hypothetical, as follows:

> The same age, education and past relevant work; limited to simple, repetitive work with no high production quotas; only superficial or you could use incidental, contact with the public and co-workers; and frequent, easy access to a restroom.

*Id*.

The VE testified that clerical-type jobs also would be available, but the number of positions would be reduced if the amount of bathroom breaks exceeded the typical 15-minute breaks provided employees. (Tr. 47.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments,

3

that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[2]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Brown was insured on her alleged disability onset date, January 1, 2003, and remained insured through June 30, 2008. (Tr. 9.) Therefore, in order to be entitled to POD and DIB, Brown must establish a continuous twelve month period of disability commencing between January 1, 2003, and June 30, 2008. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Brown established medically determinable, severe impairments, due to bipolar disorder, obsessive-compulsive disorder, panic disorder, and post-traumatic stress disorder; however, her impairments, either singularly or in combination, did not meet or equal

---

[2] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Brown was found incapable of performing her past work activities. She was, however, determined to have a Residual Functional Capacity ("RFC") for a full range of work at all exertional levels, but with certain nonexertional limitations. Specifically, the ALJ noted that Brown is "capable of performing low stress, simple, repetitive and entry level work tasks where contact with the public is incidental to the work performed." (Tr. 13.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Brown is not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by

5

substantial evidence, the Court must consider whether the proper legal standard was applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI. Analysis

Brown claims the ALJ erred by: (1) failing to consider relevant testimony and evidence in calculating her RFC; (2) rejecting the opinion of a state agency physician; and (3) relying on the VE's testimony regarding the term "low stress" as this does not adequately describe Brown.

**RFC Calculation**

Brown argues that the RFC finding, especially in light of the ALJ's acknowledging that Brown's work attempts were unsuccessful, ignored the fact that Brown was unable to perform as a general laborer, a simple, repetitive position that involves little or no contact with the public. (Doc. No. 12 at 6.) The Commissioner responds that Brown presented no evidence of any psychological treatment. (Doc. No. 14 at 9.) Moreover, the Commissioner contends that the ALJ's RFC finding is substantially consistent with the findings and opinions of the doctors who reviewed the case. *Id*.

Social Security Regulations require the ALJ to evaluate every medical opinion of record regardless of its source. *See* 20 C.F.R. §§ 404.1527(d); 416.927(d). The required evaluation first focuses on treating physicians. These opinions are entitled to controlling weight as long as they are (1) well supported by medically acceptable data and (2) not inconsistent with other substantial evidence of record. 20 C.F.R. § 416.927(d)(2); *see Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). When these requirements are not met, the treating physician rule does not apply. *Id*.

As to non-treating medical sources--such as one-time examiners or medical experts who testify during the administrative hearing– the ALJ must evaluate their opinions under the same

6

factors applicable to treating medical sources-- including the doctor's medical specialty, his expertise in social security cases, the supporting evidence, and any explanations provided by the doctor. *See* 20 C.F.R. § § 404.1527(f); 416.927(f). Furthermore, the ALJ must explain the weight given to the opinions of a State agency medical or psychological doctor. *Id*.

A mental impairment may constitute a disability within the meaning of the Act. *See* 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). However, the mere presence of a mental impairment does not establish entitlement to disability benefits. In order for a claimant to recover benefits, the alleged mental impairment must be established by medical evidence consisting of clinical signs, symptoms and/or laboratory findings or psychological test findings. 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00(B); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Once the Commissioner determines that a mental impairment exists, he must then evaluate the degree of functional loss it causes according to a special procedure. 20 C.F.R. §§ 404.1520a; 416.920a. A standard document, called the Psychiatric Review Technique Form, must be completed at each level of administrative review. This form, which corresponds to the Listing of Impairments for mental impairments, lists the signs, symptoms, and other medical findings which establishes the existence of a mental impairment.

The special procedure then requires a rating of the degree of functional loss resulting from the impairment. 20 C.F.R §§ 404.1520a(b)(2); 416.920a(b)(2). A claimant's level of functional limitation is rated in four areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, and pace; and 4) deterioration or decompensation in work or work-like settings. 20 C.F.R. §§ 404.1520a(c)(3); 416.920a(c)(3); *see Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1993) (*per curiam*). The first three areas are rated on the following five-point scale: none, mild, moderate, marked, and extreme. The fourth is rated on the following four-point scale: none, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. 20 C.F.R. §§ 404.1520a(c)(4); 416.920a(c)(4).

Where the mental impairment is found to be severe, a determination must then be made as to whether it meets or equals a listed mental disorder. If it does not, the Commissioner must

7

then complete a Mental Residual Functional Capacity Assessment form. This form also seeks to evaluate functional loss; however, it is intended to provide a more detailed analysis than that provided by the Psychiatric Review Technique form. The Commissioner must determine if this mental residual functional capacity is compatible with the performance of the individual's past relevant work, and if not, whether other jobs exist in significant numbers in the economy that are compatible with this assessment. *See* 20 C.F.R. §§ 404.1520(e)-(f), 404.1520a(c).

Here, in March, 2006, a consultative physician, Franklin D. Krause, M.D., examined Brown after ordering an x-ray of her lumbar spine. In a letter to the Bureau of Disability Determination ("BDD"), he noted Brown to have a "[h]istory of periodic right ankle, neck, lumbar spine symptoms without obvious impairment today," but he made no specific recommendations. (Tr. 236-237.) Dr. Krause also completed a Manual Muscle Testing and Range of Motion Report for the BDD, indicating all normal testing. (Tr. 239-242.)

As Brown's medical history regarding her claimed mental disabilities was non-existent, the Social Security Administration referred her to Dr. House for a psychological evaluation. Dr. House concluded that Brown was moderately limited in her (1) concentration and attention, (2) ability to withstand stress and pressure, and in her ability to relate to others, including the general public. (Tr. 247.) Dr. House found her mildly limited in her adaptability, her insight into her current situation and overall level of judgment. *Id.* Lastly, he found no limitations in her ability to understand and follow directions. *Id*. Dr. House diagnosed Brown with Bipolar Disorder NOS, Panic Disorder with Agoraphobia, Obsessive-Compulsive Disorder, and Post Traumatic Stress Disorder. *Id*.

In April, 2006, a state agency physician, Carl Tishler, Ph.D., after examining Brown, completed a mental RFC assessment and Psychiatric Review Technique. (Tr. 263-280.) Dr. Tishler found Brown to be moderately limited as follows: (1) understanding and remembering detailed instructions; (2) carrying out detailed instructions; (3) maintaining attention and concentration for extended periods; (4) working in coordination with or proximity to others without being distracted by them; (5) completing a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without

an unreasonable number and length of rest periods; (6) interacting appropriately with the general public; (7) accepting instructions and responding appropriately to criticism from supervisors; (8) getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; (9) responding appropriately to changes in the work setting; and, (10) setting realistic goals or making plans independently of others. (Tr. 263-264.)

Based on Dr. House's evaluation, the ALJ determined that Brown has an RFC to "perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is capable of performing low stress, simple, repetitive and entry level work tasks where contact with the public is incidental to the work performed." (Tr. 13.) The ALJ reasoned as follows:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.
>
> The medical evidence reveals that the [sic] [claimant] does not engage in any type of counseling and she does not use any prescription medications to control her anxiety, depression or obsessive compulsive disorder. She was never hospitalized in a psychiatric facility and she has never received psychotropic medication.
>
> Because there is little in the way of treatment for a mental disorder, the claimant underwent a psychological evaluation at the request of the Social Security Administration. During the evaluation, the claimant was fully oriented. Concentration and attention appeared moderately limited. Her pace was adequate and she persisted to task despite having some difficulty with a serial seven subtraction task. Insight and judgment were only mildly limited. She did not appear to require immediate supervision in the management of her daily activities or in the handling of her financial skills. Dr. House diagnosed bipolar disorder, NOS, panic disorder with agoraphobia, obsessive-compulsive disorder and post traumatic stress disorder. Post traumatic stress issues were felt to be late-onset. Dr. House opined that the claimant's ability to withstand stress and pressure and her ability to concentrate on tasks are moderately limited due to her bipolar and anxiety features. The claimant's ability to relate to others and deal with the general public is moderately limited. Her level of adaptability, her overall judgment and her insight into her current situation are all only mildly limited (Exhibits 2F and 10F).
>
> The claimant completed a work activity questionnaire in which she reports that she is able to care for her personal needs. She prepares meals, takes care of household chores and cares for her brother who has Down's syndrome. She enjoys watching movies, visiting the library and reading. She is able to use public transportation and drive (Exhibit3D).
>
> As for the opinion evidence, no treating or examining physician has stated that the claimant is disabled by her impairments. Moreover, the undersigned adopts the

9

> opinions of the State agency medical consultants who evaluated this matter at the initial and reconsideration levels of the administrative review process. The undersigned finds that these opinions are well supported by diagnostic testing and are not inconsistent with other evidence contained in the record.
>
> Thus the undersigned concludes that the claimant retains the residual functional capacity to perform work activity but for the need to avoid intense interaction with the public.

(Tr. 14-15.)

Brown also contends that the ALJ should have considered her unsuccessful work attempts at a general laborer position as evidence that she was unable to perform any work at all. (Doc. No. 12 at 5-6.) The Commissioner responds that Brown's past jobs as a general laborer were not considered past relevant work at Step Four as it was not substantial gainful activity. (Doc. No. 14. At 11.) Moreover, the Commissioner avers that the ALJ restricted Brown from production-type manufacturing work, and instead identified jobs such as an industrial cleaner. (Doc. No. 14 at 12.)

The ALJ acknowledged that, during the period Brown claimed disability, she attempted to work a few months as a general laborer, but was unable to continue such employment. (Tr. 11.) The ALJ concluded that this work activity represented an unsuccessful work attempt.[3] *Id*.

---

[3] The SSA considers an unsuccessful work attempt to be when a claimant is "forced to stop or to reduce below the substantial gainful activity level after a short time because of [claimant's] impairment." §§ 404.1574(a)(1), 416.974(a)(1).

Past relevant work is defined as work a claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for a claimant to learn the job. §§404.1560, 416.960. Substantial gainful activity is defined as follows:

Substantial gainful activity is work activity that is both substantial and gainful:

(a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

10

Under S.S.R. 05-02, relied upon by Brown, the significance of an unsuccessful work attempt is that a claimant's earnings made from such an attempt, will not be included as part of a claimant's substantial gainful activity. §§ 404.1574(c), 416.974(c).

Substantial evidence supports the RFC finding. As Brown was never treated for her mental impairments, the ALJ properly relied upon the state agency examining and consultative doctors in calculating the RFC.

### Opinion of State Agency Physician

Brown argues that the ALJ rejected a portion of Dr. House's opinion that a friend and co-worker was a "coping mechanism," which enabled her to work, "at least somewhat, on a temporary basis." (Doc. No. 12 at 6.) She relies on a POMS directive stating that "an individual has a substantial loss of ability to perform a basic mental activity when he/she cannot perform the activity in regular, competitive employment, but at best, could do so only in a sheltered work setting where special considerations and attention are provided." POMS DI 25020.010(A)(3).[4] Brown asserts that the "special consideration" in her case is that she is unable to work without her friend's supportive presence. *Id*.

The Commissioner responds that Brown has not presented any evidence, other than her own assertions, that she was unable to work without the presence of her friend and, therefore, the ALJ was within his zone of choice. (Doc. No. 14 at 13.) *See Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted) ("[T]here is a 'zone of choice' within which the Commissioner can act, without fear of court interference.").

Social Security Ruling 96-6p expressly provides that the opinion of a state agency psychological consultant such as Dr. House "may be entitled to greater weight than a treating

---

20 C.F.R. §§ 404.1572, 416.972.

[4]The Program Operations Manual System ("POMS") is the operational reference used by Social Security Administration staff to conduct it's daily business. "While these administrative interpretations [POMS] are not products of formal rulemaking, they nevertheless warrant respect ..." *Washington Dep't of Soc. Servs. v. Keffeler*, 537 U.S. 371, 385, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003). The POMS is available at http://www.ssa.gov/regulations/index.htm.

source medical opinion if the State agency ... consultant's opinion is based on a review of a complete case record." S.S.R. 96-6p. Dr. House was the only expert to examine Brown and review the entire case file. Brown did not seek any additional medical exams to assist the ALJ in making his determination or in clarifying inconsistencies. *See Her v. Commr of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999) (claimant bears the burden to provide the evidence for the RFC calculation).

Although the Commissioner argues that Dr. House merely reiterated Brown's claim that she needed her friend in order to cope with working, it is difficult to confirm that by the report itself. Dr. House concluded, in pertinent part, as follows:

> 3. Ability to withstand stress and pressure appears moderately limited, due to bipolar and anxiety features. She seems to have struck upon a coping mechanism that allows her to work, at least somewhat, on a temporary basis.
>
> 4. Ability to relate to others and deal with the general public moderately limited. Although she is a panic disorder with agoraphobia, she does have a friend with whom she interacts and works constantly, and the relationship allows her to work because she is in close proximity to this individual.

(Tr. 247.) Clearly, Dr. House was assigning Brown moderate limitations in her ability to relate to others, deal with the general public, and handle stress and pressure. It seems that Dr. House accepted Brown's claim of reliance on her friend in order to cope with the work she was doing. Dr. House's opinion, however, should not be read to prohibit all work without the friend. Moderate limitations in these areas, in and of themselves, do not prohibit all work. The ALJ accommodated these nonexertional limitations in his hypothetical by restricting Brown to "low-stress, simple, repetitive and entry level work tasks," as well as to incidental contact with the public. (Tr. 13.) As such, the VE did not include jobs such as general laborer positions of the type Brown could not perform.

**"Low Stress"**

Lastly, Brown argues that the ALJ improperly relied on the VE's testimony regarding the term "low stress" as not adequately describing Brown's nonexertional impairments. (Doc. No. 12 at 7-8.) The Commissioner defends the ALJ noting that, other than Dr. House's diagnoses, there were no records regarding treatment for any of Brown's nonexertional impairments. (Doc. No.

12

14 at 15.)

>The ALJ's hypothetical stated as follows:
>
>Assume further that the individual has no physical limitations, but has the residual functional capacity to do jobs that involve performing simple, repetitive and entry-level work tasks. * * * That are limited to work where contact with the public is incidental to the work performed and limited to low-stress jobs.  Could you come up with a job for such a hypothetical individual?

(Tr. 44.)  The VE responded that such an individual could perform such jobs as an industrial cleaner.  (Tr. 45.)  The ALJ did not just use the term "low-stress," but also indicated "simple, repetitive and entry-level work tasks" and incidental contact with the public.  The hypothetical accurately reflected the ALJ's determination of Brown's RFC.  Further restrictions as claimed by Brown, but rejected by the ALJ, need not be included.  The Sixth Circuit has held that an ALJ should not incorporate unsubstantiated complaints into hypotheticals addressed to a VE.  *See Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994).  The ALJ properly rejected Brown's subjective complaints regarding her mental impairments as Brown did not seek treatment of her anxiety, depression or obsessive compulsive disorder.  (Tr. 14.)

After considering Brown's nonexertional factors, the ALJ found that she could perform the "requirements of representative occupations such as industrial cleaner."  (Tr. 16.)  The ALJ concluded that Brown is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  *Id*.  The ALJ reasonably credited the restrictions supported by the record.

### . VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence.  Accordingly, the decision of the Commissioner should be affirmed.

s/ Greg White<br>United States Magistrate Judge

Date:     February 3, 2011

### OBJECTIONS
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and**

**Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**